UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA,
INDIANAPOLIS DIVISION

| | |
|---|---|
| **VALBRUNA SLATER STEEL CORPORATION and FORT WAYNE STEEL CORPORATION,**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**JOSLYN MANUFACTURING COMPANY, L.L.C.,**<br><br>**Defendant.**<br><br>**INDIANA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT,**<br><br>**Interested Party.** | CAUSE NO.   1:15-mc-39-SEB-DKL |

**ENTRY and ORDER**

**Defendant's *Motion to Compel* [doc. 1]**

This matter on the Court's miscellaneous docket relates to a case pending in the United States District Court for the Northern District of Indiana, *Valbruna Slater Steel v. Joslyn Manufacturing Co.*, No. 1:10-cv-44-JD-SLC (N.D. Ind.). Defendant Joslyn Manufacturing Company, L.L.C. ("Joslyn"), served a Northern-District subpoena on Andrea Robertson Habeck, an employee of interested non-party Indiana Department of Environmental Management ("IDEM"), for a deposition and for production of documents. The subpoena was served at her place of employment in Indianapolis, Indiana, in this district, and commanded compliance to occur in Indianapolis. Ms. Habeck appeared, was examined, and she produced documents in response to the

1

subpoena *duces tecum*. She withheld twenty responsive documents based on IDEM's assertion of the deliberative-process privilege.

Joselyn filed, in the Northern District, a motion for an order compelling IDEM to produce the withheld documents and the motion was fully briefed there. The assigned magistrate judge denied the motion, ruling that, pursuant to Fed. R. Civ. P. 45(d)(2)(i), it should have been filed in this district. [Doc. 1-1, pp. 2-3.] Joslyn filed the present Cause and motion to compel and Joslyn and IDEM have briefed their positions. Joslyn submitted copies of the parties' earlier briefing in the Northern District and submitted several additional items of evidence. IDEM supported its response with a privilege log of the twenty withheld documents, [doc. 9-1, pp. 3-7], and the declaration of its Commissioner, Thomas W. Easterly, asserting the privilege, [doc. 9-1, pp. 1-2]. Plaintiffs Valbruna Slater Steel Corporation and Fort Wayne Steel Corporation have not significantly participated in the briefing in either district.

Joslyn argues that the withheld documents are relevant to issues raised in an affidavit of Ms. Habeck that Plaintiffs produced in discovery. [Doc. 1-1, pp. 18-19.] However, because IDEM does not argue that the documents are irrelevant, there is no relevancy dispute that requires resolution. Their relevancy is assumed.

Joslyn makes two arguments: first, the deliberative-process privilege is not recognized in Indiana and, second, if it were, IDEM waived the privilege when its employee, Ms. Habeck, signed her affidavit for Plaintiffs' use in this case and it was, in fact, used. IDEM responds, first, that Joslyn's motion to compel is presumed untimely

2

because it was filed after discovery closed and Joslyn has not shown the good cause and excusable neglect required to overcome the presumption of untimeliness.  Second, IDEM argues that Joslyn's subpoena to Ms. Habeck is invalid because it suffers from several procedural deficiencies.  Third, IDEM argues that whether Indiana recognizes the deliberative-process privilege is both uncertain and irrelevant because federal privilege law, which recognizes the privilege, controls in this federal-question case and the privilege applies to the withheld documents.  Finally, IDEM argues that Ms. Habeck's affidavit did not waive the privilege.

**Discussion**

**1. Timeliness.**  IDEM argues that Joslyn's motion should be denied as untimely because it was filed after the close of discovery and Joslyn has failed to show the good cause and excusable neglect required to overcome the untimeliness.  IDEM recognizes that "[t]he determination of the timeliness of a motion to compel lies within the discretion of the court."  *Response in Opposition to Defendants' Motion To Compel* [doc. 9] ("*Response*"), at 6.  In an exercise of this discretion, the Court finds that Joslyn's motion is timely.  IDEM states that discovery closed on January 30, 2015, but Ms. Habeck's deposition and production of documents did not occur until February 17, 2015, after that deadline had passed.  *Deposition of Andrea Rae Robertson Habeck* [doc. 1-1, p. 31].  According to IDEM's own chronology, Plaintiffs produced Ms. Habeck's affidavit on the last day of discovery,

January 30, 2015, and, five days later, on February 4, 2015,[1] IDEM received a faxed copy of Joslyn's subpoena *duces tecum* and *ad testificandum* to Ms. Habeck for the deposition and production to occur on February 17, 2015.  (*Response*, at 2.)  There followed a series of communications between IDEM and Joslyn regarding the deposition and production. Ms. Habeck, accompanied by IDEM's counsel, appeared for examination and made production on the noticed date of February 17, 2015.

The day after the deposition, February 18, 2105, Joselyn's counsel contacted IDEM's counsel and "challenged IDEM's assertion of the deliberative process privilege." (*Response*, at 4.)  There followed communications between counsel regarding IDEM's offer of a privilege log by March 6, 2015, (in accordance with the thirty-day response time from the date Joslyn's subpoena was served), Joslyn's demand for production of the documents by February 23, 2015, in light of the dispositive-motions deadline, and IDEM's assertions of multiple problems with Joslyn's subpoena.  (*Id.*, at 4-5.)  IDEM does not state that it, at any time, pointed out, asserted, or otherwise resisted the subpoena on the ground of, the discovery deadline.  Joslyn filed its first motion to compel in the Northern District on February 26, 2015, six days after the parties' last communication and three days after the date by which Joslyn demanded IDEM produce the documents.  [Doc. 1-1, at 7-8.]  The Northern District denied Joslyn's motion on April 28, 2015, [doc. 1-1, pp. 2-

---

[1] Joslyn asserts that it served its subpoena on Ms. Habeck by facsimile and mail on February 3, 2015.  (*Motion To Compel* [doc. 1], at 4.)

5], and Joslyn filed the present miscellaneous action and motion to compel on May 18, 2015.

IDEM did not raise an issue about the timeliness of Joslyn's subpoena to Ms. Habeck until March 11, 2015, in its response to Joslyn's motion to compel in the Northern District. (*Response in Opposition to Defendants' Motion To Compel* [doc. 1-1], p. 5.) IDEM contends there — but not in its brief here — that, at the time that it served its subpoena, Joslyn neglected to inform Ms. Habeck or IDEM that the discovery deadline had already passed. (*Id.*) In its order denying Joslyn's motion to compel, the Northern District neither ruled on nor mentioned the discovery deadline or IDEM's timeliness argument, although it did rule that service of Joslyn's Northern-District subpoena on Ms. Habeck in Indianapolis satisfied Rule 45's territorial limits. If the timeliness of Joslyn's subpoena or its motion to compel were an issue for the magistrate judge in the Northern District, who has direct supervision of case management, then she had an opportunity in her order to advise the parties and this Court of her position.

As it is, this Court finds that IDEM forfeited any objections to the timeliness of Joslyn's subpoena and to the present motion when it, apparently, failed to look into the discovery deadline at the time, failed to object to the subpoena as untimely, and, primarily, when it complied with the subpoena. Joslyn's motion is not untimely.

**2. The subpoena's procedural deficiencies.** IDEM argues that Joslyn's motion to compel should be denied because there are "a litany of procedural shortcomings" with its subpoena to Ms. Habeck: (1) it was sent after the discovery deadline; (2) it failed to

5

command document production because the production section was blank, although a documents-production rider was attached; (3) it failed to state the method of recording; (4) it failed to give Plaintiffs the required notice; and (5) it was not properly served because service did not include the required witness fee. IDEM argues that it has not waived its objections because Fed. R. Civ. P. 45(d)(2)(B) affords a person fourteen days "after the subpoena is served" to serve his objections and, as the litany of shortcomings show, Ms. Habeck was not properly served. Apparently, IDEM contends that there is no deadline on its objections because Ms. Habeck was not served properly. IDEM provided no legal support for its arguments in its present brief or in its earlier brief.

The Court finds that IDEM waived any objection to the procedural deficiencies in Joslyn's subpoena when it was aware of those deficiencies before the deposition compliance date (having specifically addressed them with Joslyn before) and, nonetheless, proceeded with Ms. Habeck's deposition and produced documents responsive to the subpoena. IDEM could have filed a motion to quash the subpoena, or ignored it, if IDEM believed that the subpoena was not properly served and suffered other fatal deficiencies. Its decision to proceed with the deposition and production waived its objections. *See Powell v. Time Warner Cable, Inc.*, No. Civil Action No. 2:09-cv-600, 2010 WL 5464895, *3 (S.D. Ohio, Dec. 30, 2010); *PHL Variable Ins. Co. v. Alan Wollman Ins. Trust*, Civil Action No. 08-53-JJF, 2010 WL 2836388 (D. Del., July 16, 2010); *Smith v. Mallick*, Civil Action No. 96-cv-2211 (HHK/JMF), 2006 WL 2571830, *2 (D. D.C., Sept. 6, 2006); *Angell v. Shawmut Bank Connecticut Nat. Ass'n*, 153 F.R.D. 585, 590 (M.D. N.C. 1994);

*Bethany Medical Center v. Harder*, No. Civ. A. No. 85-2415, 1987 WL 47845, *9 (D. Kansas, March 12, 1987).

**3. Deliberative-process privilege.** Relying on *Popovich v. Indiana Dept. of State Revenue*, 7 N.E.2d 406 (Ind. Tax Ct. 2014), Joslyn initially argued, in the Northern District, that IDEM's withheld documents are not protected by the deliberative-process privilege because Indiana does not recognize the privilege. IDEM responded with two arguments. First, it argued that the *Popovich* decision has little persuasive authority because it is an interlocutory ruling, by a specialized trial court, which the state-agency party has yet to appeal, and the decision seems to conflict with precedent from the Indiana Supreme Court. Second, it argued that, under Rule 501, *Federal Rules of Evidence*, federal privilege law governs in this federal-question case and the privilege applies to the documents that IDEM has withheld. In its reply, Joslyn admitted that it had mistakenly assumed that a state-agency's privilege would be governed by the state's law and it conceded that IDEM was correct that federal law governs. (*Reply to Indiana Department of Environmental Management Response to Motion To Compel* [doc. 1-1, p. 118].) Nonetheless, Joslyn argued that the federal privilege does not apply to the withheld documents, the privilege is overcome by Joslyn's particularized need for the documents, and the privilege was waived by Ms. Habeck's execution of her affidavit for Plaintiff's use in the underlying case. (*Id.*, at 5-6.)

In its present motion to compel, Joslyn again presents the *Popovich* decision and states that the decision is "illustrative as to why this privilege is not appropriate in this

instance as well," but its argument is indecipherable.  (*Motion To Compel* [doc. 1] ("*Motion*"), at 7.)  Joslyn makes a second argument, repeating and expanding its earlier argument, that Ms. Habeck waived any deliberative-process privilege when she signed her affidavit and provided it to Plaintiffs to support their claim in the Northern-District case.  In its response, IDEM argues again that (1) the *Popovich* decision is not good Indiana law for the same reasons urged in its previous brief, (2) the federal deliberative-process privilege governs and applies, and (3) the use of Ms. Habeck's affidavit did not waive the privilege.  Joslyn did not file a reply.

IDEM is correct that federal law governs its assertion of privilege in relation to Plaintiffs' sole remaining claim (a federal-question claim for cost recovery under § 107(a) of the Comprehensive Environmental Response Compensation and Liability Act)[2], F.R.E. 501,[3] and that federal law recognizes the deliberative-process privilege, *Dept. of the Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001);

---

[2] Plaintiffs pled the federal claim and a state-law claim under Indiana's Environmental Legal Action statute, Ind. Code 13-30-9-1, *et seq*.  *Valbruna Slater Steel*, No. 1:10-cv-44-JD-SLC, *Complaint* [doc. 1] (N.D. Ind., Feb. 11, 2010).  The Northern District entered summary judgment on the state-law claim.  *Id.*, *Memorandum Opinion and Order* [doc. 35] (April 11, 2011).

[3] F.R.E. 501 reads:

> The common law — as interpreted by United States courts in the light of reason and experience — governs a claim of privilege unless any of the following provides otherwise:
> - the United States Constitution;
> - a federal statute; or
> - rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

*United States v. Farley*, 11 F.3d 1385 (7th Cir. 1993). However, it does not follow, *ipso facto*, that the federal privilege applies to IDEM's withheld documents in this case.

The deliberative-process privilege protects pre-decisional communications among agency subordinates and decision-makers in order to encourage candid, frank, uninhibited exchanges of opinions and recommendations for the purpose of facilitating the development of governmental policies and decisions and avoiding confusing and misleading the public. *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-54 (1975); *Farley*, 11 F.3d at 1389; *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). The privilege should be applied "as narrowly as consistent with efficient government operation." *Coastal States*, 617 F.2d at 868 (cited in *Farley*, 11 F.3d at 1389).

Although the federal deliberative-process privilege obviously applies to federal agencies, the question of whether it protects IDEM's withheld documents in this case requires further analysis, and that analysis begins with some fundamental principles that govern the recognition of privileges and the construction of their scope.

> The common-law principles underlying the recognition of testimonial privileges can be stated simply. "'For more than three centuries it has now been recognized as a fundamental maxim that the public . . . has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general one.'"

*Jaffee v. Redmond*, 518 U.S. 1, 9 (1996) (citations omitted). Because privileges "contravene the fundamental principle that '"the public . . . has a right to every man's evidence,"' . . . they must be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Trammel v. United States*, 445 U.S. 40, 50 (1980). Privileges "'are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710 (1974). *United States v. Lofton*, 957 F.2d 476, 477 (7th Cir. 1992) ("Evidentiary privileges must be construed narrowly to protect the search for truth."). *See Untied States v. Jicarilla Apache Nation*, 131 S.Ct. 2313, 2332 (2011).

    If extension of the privilege to IDEM's withheld documents is not necessary to serve the purposes of the privilege, then extension must be denied in favor of the greater general public interest in discovering truth and arriving at correct judicial determinations. The only purpose that would justify recognition of the privilege in this case is one of comity to state interests. There is no doubt that the fundamental purpose of the federal deliberative-process privilege — to encourage frank and uninhibited deliberations during the development of federal governmental policies — is not served by protecting IDEM's internal deliberations. Nonetheless, state privileges should be recognized in federal-question cases when, and to the extent that, they do not substantially contravene federal policy. *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981). After recognizing that a federal court is not required

10

to apply state law to a privilege question on a claim under federal law, the Court of Appeals for the Seventh Circuit declared:

> Instead, the question of whether the privilege . . . should be recognized in this case is "governed by the principles of the common law as they may have been interpreted by the courts of the United States in the light of reason and experience."  Fed.R.Evid. 501.
>
> This does not mean, however, that federal courts should not consider the law of the state in which the case arises in determining whether the privilege should be recognized as a matter of federal law.  "A strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy."  And where a "state holds out the expectation of protection to its citizens, they should not be disappointed by a mechanical and unnecessary application of the federal rule."

*Memorial Hospital*, 664 F.2d at 1061.  Thus, a state that recognizes a deliberative-process privilege for its own agencies should, as a matter of comity, have its privilege applied in federal court on a federal claim, if doing so would not substantially contravene federal interests.  However, if a state does not recognize the privilege and does not afford its own agencies that protection, then comity does not impel a federal court to apply the privilege in federal-question cases, and there is no evident independent federal interest or purpose that is served in doing so.[4]  There is no reason to extend to state agencies in federal court

---

[4] See *Government Suppliers Consolidating Services, Inc. v. Bayh*, 133 F.R.D. 531, 535 (S.D. Ind. 1990) ("Common sense, informed by a general awareness of the purposes behind the privilege, must be used to resolve questions over the privilege's scope.").  Although the Court agrees with this principle in *Government Suppliers*, as will be seen below, it does not agree with the decision's application of it.

greater privileges than they enjoy in their own courts under their own law.[5]  *BBC Baymeadows, L.L.C. v. City of Ridgeland, Mississippi*, Civil Action Nos. 3:14-cv-676-HTW-LRA, 3:14-cv-938-HTW-LRA, *Memorandum Opinion and Order*, 2015 WL 5943250, *5-6 (S.D. Miss., Oct. 13, 2015); *Buford v. Holladay*, 133 F.R.D. 487, 494 (S.D. Miss. 1990). Moreover, in a state that does not recognize the deliberative-process privilege for its own agencies, the overall efficacy of extending the privilege to the state's agencies in federal-question litigation would likely be too insubstantial to outweigh the fundamental public interest in truth-seeking and accurate court determinations.

The remaining question is whether Indiana recognizes the deliberative-process privilege. Joslyn's initial (and possibly current) argument that Indiana does not recognize it is based on the Indiana Tax Court's 2014 *Popovich* opinion, which was reiterated in *Brandenburg Industrial Service Co. v. Indiana Dept. of State Revenue*, 26 N.E.3d 147, 154 (Ind. Tax Ct. 2015). IDEM counters that it is "at best dubious" that *Popovich*'s holding "truly represents Indiana law," because it is a non-precedential decision of a specialized trial court, it is an interlocutory order of which the state agency has not had an opportunity to seek appellate review, and it "seems" to conflict with the Indiana Supreme Court's 1996 opinion in *Medical Licensing Board of Indiana v. Provisor*, 669 N.E.2d 406 (Ind. 1996). Even granting the non-precedential and interlocutory statuses of the *Popovich* and *Brandenburg Industrial Service* decisions, IDEM presents no on-point, precedential opinions of

---

[5] The deliberative-process privilege is unique to government. It does not protect a confidential professional or familial relationship (*e.g.*, attorney/client, spousal, and psycho-therapist/patient relationships) in which there might be an independent federal interest.

appellate courts in Indiana — or even any non-precedential trial-court decisions — that recognize the deliberate-process privilege in Indiana law.  At most, it argues only that *Popovich* "seems" to conflict with the Indiana Supreme Court's *Provisor* opinion.  According to the briefing presented to the Court, *Popovich* and *Brandenburg Industrial Service* are the only Indiana decisions to directly address the privilege.

*Popovich* first recognized controlling principles of privilege law in Indiana, drawn primarily from Indiana Supreme Court opinions:

> In Indiana, evidentiary privileges are generally statutory in nature. *Slate v. Int'l Bus. Machs. Corp.* (*I.B.M.*), 964 N.E.2d 206, 209-10 (Ind. 2012); *Richey v. Chappell,* 594 N.E.2d 443, 445-46 (Ind. 1992); *Terre Haute Reg'l Hosp., Inc. v. Trueblood,* 600 N.E.2d 1358, 1360 (Ind. 1992); *Scroggins v. Uniden Corp. Am.*, 506 N.E.2d 83, 86 (Ind. Ct. App. 1987), *trans. denied.*  Most evidentiary privileges were unknown at common law and are strictly construed to limit their application.  *Scroggins,* 506 N.E.2d at 86.  Consequently, [a] grant [of an evidentiary] privilege and the scope of that privilege are policy choices of the Legislature."  *I.B.M.*, 964 N.E.2d at 210.

*Popovich*, 7 N.E.3d at 415.

> Moreover, the Indiana Supreme Court has cautioned that evidentiary privileges, even when supported by sound public policy, "'are not lightly created nor expansively construed [because] they are in derogation of the search for truth.'"  *In re C.P.*, 563 N.E.2d 1275, 1277 (Ind. 1990) (*quoting U.S. v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)).

*Id.*, at 416.

The *Popovich* court then rejected the logic of the state's argument that, because the *Federal Rules of Civil Procedure* were the model for the *Indiana Rules of Trial Procedure*, a deliberative-process privilege exists in Indiana because federal law recognizes the privilege.  The court wrote that, while Indiana courts can consider federal rationales and

13

experiences when interpreting Indiana's rules, "the existence of a federal privilege does not necessarily animate a similar state privilege." *Id.*, at 415.[6] The court also rejected the state's argument that the privilege "is rooted in" the protection that the Indiana Access to Public Records Act ("APRA") provides to state governmental units from disclosing advisory or deliberative materials that are expressions of opinions or are speculative and that are communicated for the purpose of decision making. It held that the APRA applies to only requests for public disclosure of records under the APRA's provisions, which is different than discovery requests in litigation which are governed by Indiana's trial rules. *Id.*, at 416 ("Therefore, the APRA is not a basis for finding that a deliberative process privilege exists for purposes of discovery.").

As IDEM does here, the state in *Popovich* also relied on the *Provisor* decision.[7] But the tentativeness of IDEM's argument — *Popovich* "seems" to conflict with *Provisor* — is well warranted because *Provisor* did not discuss, or make any holding regarding, a deliberative-process evidentiary privilege. *Provisor* was a suit under Indiana's Administrative Orders and Procedures Act by a physician for judicial review of the Indiana Medical Licensing Board's final decision to suspend her medical license. She claimed that the Board's decision violated statutory requirements that the Board achieve

---

[6] The *Popovich* court specifically found *Jones v. City of Indianapolis*, 216 F.R.D. 440 (S.D. Ind. 2003), and *Government Suppliers Consolidating Services, Inc. v. Bayh*, 133 F.R.D. 531 (S.D. Ind. 1990), to be unpersuasive "because they involve either the application of federal law, or were non-binding federal interpretations of state law. *See, e.g., Indiana Dep't Pub. Welfare v. Payne*, 622 N.E.2d 461, 468 (Ind. 1993)." *Popovich*, 7 N.E.3d at 415 n. 11.

[7] The *Popovich* court noted that the state also cited *Baseball, Inc. v. Indiana Dept. of State Revenue*, 672 N.E.2d 1368, 1376 (Ind. Ct. App. 1996), *trans. denied*, but that decision relied solely on the *Provisor* opinion.

14

consistency in its rulings and not consider factors outside the administrative record. To support her claims, the physician tendered on the Board requests for admissions, interrogatories, and requests for production. The trial court denied the Board's motion for a protective order and granted the physician's motion to compel, and the Court of Appeals affirmed both rulings on interlocutory appeal. *Provisor*, 669 N.E.2d at 407-08.

The Supreme Court described the narrow issue before it as "whether discovery is available on judicial review of an administrative agency adjudication," *Provisor*, 669 N.E.2d at 408, and "whether it was proper for the trial court to order discovery in support of the claims," *id.*, at 409. It founded its decision on "several important principles of the administrative law of judicial review" which "are grounded in the constitutional doctrine of separation of powers or functions," *id.*, at 408, and in statutory restrictions, not on the law of discovery or evidentiary privilege. The Supreme Court explained that a court's role on judicial review is not to try the case *de novo* or to substitute its judgment on the merits for the agency's, but "'solely to determine whether or not the body was outside the limits and jurisdiction of such body. Once the matter of jurisdiction is determined the court has no further right to interfere with an administrative procedure which belongs to another department of the government — not the judiciary.'" *Id.* Consequently, a court may review only issues that were raised before the agency and its review must be confined to the administrative record, absent certain exceptions and conditions. *Id.*, at 408-09.

The Court found that the physician's discovery requests sought the mental processes of the Board's members and the deliberative processes of the Board in deciding

15

her case, and it held that such "judicial inquiries into the private motivation or reasoning of administrative decisionmakers is a substantial intrusion into the functions of the other branches of government." *Id.*, at 410. The Court concluded:

> The AOPA requires that judicial review "must be confined to the agency record," Ind. Code § 4-21.5-5-11, except for the narrow exceptions of Ind. Code § 4-21.5-5-12; "not some new record made initially in the reviewing court." *See Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). If the reviewing court finds, on an issue properly preserved for judicial review, that the record before the board does not support the board action, that the board has not considered all relevant factors, or that it simply cannot evaluate the challenged board action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the board for additional investigation or explanation. *See Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985). "The court may not try the cause *de novo* or substitute its judgment for that of the [board.]" Ind. Code § 4-21.5-5-11. Allowing the discovery sought here would violate this mandate.

*Id.*, at 410.

It is clear that *Provisor* does not address a deliberative-process evidentiary or discovery privilege under Indiana's Trial Rules, statutes, or common law. It did not discuss the law of privileges generally or any of the underlying policies or purposes for the deliberative-process privilege, *e.g.*, encouraging candid and frank opinions and discussions in order to better facilitate the development of government policies and enhance the quality of those policies. The Court decided only the issue of the scope of judicial review of administrative adjudications according to constitutional principles of separation of powers and statutory administrative-law restrictions. It had no opportunity to address the deliberative-process privilege in the context of general civil

16

litigation or civil discovery under the Trial Rules.  Therefore, *Provisor* cannot be construed as recognizing a deliberative-process evidentiary privilege in civil litigation.[8]

Because privileges generally are created by statute in Indiana and IDEM has cited neither a statute or other authority creating or recognizing a deliberative-process privilege in Indiana law, this Court concludes that Indiana does not recognize the privilege.[9]  Therefore, IDEM's privilege objection to producing the withheld documents is overruled.  This ruling renders moot Joslyn's alternative argument that Ms. Habeck's affidavit waived IDEM's privilege.

---

[8] In an analogous case, a decision from the Northern District of Illinois extended the federal deliberative-process privilege to Illinois state agencies in a federal-question case because it intended to "foster a more effective and efficient deliberative process" for state entities and because it discerned, in the Illinois Freedom of Information Act (analogous to Indiana's APRA), an "emerging policy of protecting such governmental deliberative materials." *Bobkoski v. Board of Education of Cary Consolidated School District 26*, 141 F.R.D. 88, 92 (N.D. Ill. 1992).  The policy was short-lived, however, when, six years later, the Illinois Supreme Court held that there is no deliberative-process evidentiary privilege in Illinois.  Applying privilege principles that are similar to Indiana's, the Court found that the extension or establishment of a privilege "is a matter best deferred to the legislature," and that the Illinois Freedom of Information Act, was not a statutory creation of the privilege. *People, ex rel. Birkett v. City of Chicago*, 705 N.E.2d 48, 51-52 (Ill. 1998).  *See Allen v. Chicago Transit Authority*, 198 F.R.D. 495, 502 (N.D. Ill. 2001).  *But see Tumas v. Board of Education of Lyons Township High School District No. 204*, No. 06-C-1943, *Memorandum Opinion and Order*, 2007 WL 2228695, *5 (N.D. Ill., July 31, 2007).

[9] Thus, this ruling disagrees with the holdings of *Gradeless v. American Mutual Share Ins. Corp.*, No. 1:10-cv-86-TWP-DML, *Order on Plaintiffs' Motion To Compel Discovery etc.*, 2011 WL 221895, *4 (S.D. Ind., Jan. 19, 2011); *Berning v. UAW Local 2209*, No. 1:06-cv-87, *Opinion and Order*, 2007 WL 1385367 (N.D. Ind., May 4, 2007); and *Government Suppliers Consolidating Services, Inc. v. Bayh*, 133 F.R.D. 531, 534 (S.D. Ind. 1990), and the rationales in *Tumas v. Board of Education of Lyons Township High School District No. 204*, No. 06-C-1943, *Memorandum Opinion and Order*, 2007 WL 2228695, *4-5 (N.D. Ill., July 31, 2007), and *Evans v. City of Chicago*, 231 F.R.D. 302, 315 n. 5 (N.D. Ill. 2005).

**Conclusion**

Defendant Joslyn Manufacturing Company, L.L.C.'s *Motion To Compel* [doc. 1] is **GRANTED**. Interested Party Indiana Department of Environmental Management is **ORDERED** to produce the subject twenty documents, listed on it privilege log, [doc. 1-1, pp. 77-81; doc. 9-1, pp. 3-7], no later than **seven days** from the date of this *Entry and Order*.

**SO ORDERED this date:** 11/03/2015

*Denise K. LaRue*
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.